## UNITED STATES v. ASHLEY BREAD CO.

### No. 9715.

District Court, S. D. West Virginia.
Nov. 27, 1944.

L. E. Given, U. S. Atty., and A. Garnett Thompson, Asst. U. S. Atty., both of Charleston, W. Va., and Ben Ivan Melnicoff, Office of Solicitor, United States Department of Agriculture, of Washington, D. C., for plaintiff.

Brown, Jackson & Knight, and Homer A. Holt, and Frank R. Lyon, Jr., Attys. at Law, all of Charleston, W. Va., for defendant.

BEN MOORE, District Judge.

The Government charges in this information that the defendant has violated a regulation contained in a food distribution order promulgated by the War Food Administrator. The particular provision to which the charge relates is found in paragraph (g) of Section 1404.1 of Amendment 5 to Food Distribution Order Number 1, purportedly issued under the authority granted to the President in the Second War Powers Act of 1942, 50 U.S.C.A.Appendix § 631 et seq. The applicable provisions of the Act, which are found in § 2(a) (2) of Title III, 50 U.S.C.A.Appendix § 633, are as follows: "* * * Whenever the President is satisfied that the fulfillment of requirements for the defense of the United States will result in a shortage in the supply of any material or of any facilities for defense or for private account or for export, the President may allocate such material or facilities in such manner, upon such conditions and to such extent as he shall deem necessary or appropriate in the public interest and to promote the national defense."

Paragraph (g) of Food Distribution Order Number 1 reads in its entirety as follows: "(g) *Consignment, returns, credits, discounts.* No bakery, or other seller or distributor of bakery products, his agents or employees, shall deliver bakery products on consignment or otherwise than pursuant to a bona fide sale of such products; or give any refund, credit, exchange, discount, gift, or allowance, for or in connection with the sale or delivery of bakery products; *or resume possession* or accept the return *of any bakery product.* No purchaser of bakery products shall accept delivery of such products on consignment or otherwise than pursuant to a bona fide sale of such products; or return any bakery product to any seller thereof; or accept any refund, credit, exchange, discount, gift, or allowance for or in connection with the purchase or delivery of bakery products. This paragraph (g) shall not be construed to prohibit such discounts as are based upon quantities, cash payment, or reasonable customer classification, and which are openly published and equally available to all who fall within their terms." (Italics supplied.)

The information charges in five separate counts that the defendant, a corporation engaged in the bakery business, "did * * * willfully resume possession of * * * bread previously manufactured by the said defendant." No other violation is charged.

Defendant has filed a written demurrer to and motion to quash the information. While seven grounds are stated, the primary and fundamental ground of demurrer is that the regulation, violation of which is charged, is not a valid exercise of the powers granted to the President by the Second War Powers Act, 56 Stat. 176, in that the prohibition contained in paragraph (g) bears no reasonable relationship to the

power granted to the President to allocate material and facilities.

Defendant does not dispute the authority of the War Food Administrator to establish and promulgate any regulation which the President himself was authorized to make pursuant to the foregoing provisions of the Second War Powers Act. The constitutionality of the act itself is not challenged. It is not contended that an information would not lie against the defendant if the defendant should be deemed to have violated a regulation validly made in pursuance of the power to allocate material or facilities granted to the President by the Second War Powers Act of 1942 and by him delegated through successive steps to the War Food Administrator. While other minor grounds of objection are set out in the demurrer, they do not call for consideration here unless it shall be first determined that the regulation whose validity is assailed lies within the scope of the administrative power so granted to the President.

The simple question is thus presented: Is the prohibition against resumption of possession of bakery products a "manner," or "condition," or measure of "extent" of "allocating" material or facilities within the meaning of § 2(a) (2) of Title III of the Second War Powers Act of 1942?

So far as I am advised, the particular regulation in question here has never been judicially construed, nor its validity determined by any court. It is therefore necessary that I make an independent analysis of the language used in the regulation and decide, on general principles of law, whether the regulation does in fact fall within the ambit of the statutory power.

■ It is said in the case of Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 571, 88 L.Ed. 733: "When Congress passes an Act empowering administrative agencies to carry on governmental activities, the power of those agencies is circumscribed by the authority granted. This permits the courts to participate in law enforcement entrusted to administrative bodies only to the extent necessary to protect justiciable individual rights against administrative action fairly beyond the granted powers. The responsibility of determining the limits of statutory grants of authority in such instances is a judicial function entrusted to the courts by Congress by the statutes establishing courts and marking their jurisdiction. * * * This is very far from assuming that the courts are charged more than administrators or legislators with the protection of the rights of the people. Congress and the Executive supervise the acts of administrative agents. The powers of departments, boards and administrative agencies are subject to expansion, contraction or abolition at the will of the legislative and executive branches of the government. These branches have the resources and personnel to examine into the working of the various establishments to determine the necessary changes of function or management. But under Article III, Congress established courts to adjudicate cases and controversies as to claims of infringement of individual rights whether by unlawful action of private persons or by the exertion of unauthorized administrative power."

■ I agree with the contention of the Government, supported by the decision in United States v. Trilling, D.C.E.D.Pa.1943, 51 F.Supp. 843, 845, that: "It is clear that in the enactment of the Second War Powers Act, Congress intended to create a fluid method of meeting wartime emergencies and necessities."

And further, that: "The dislocation of sources of supplies incident to a war-time economy makes imperative a maximum flexibility and fluidity in the administration of any regulatory priorities procedure."

■ The statute itself provides that the power of allocation shall be exercised "in such manner, upon such conditions and to such extent as he (the President) shall deem necessary or appropriate in the public interest and to promote the national defense"; and this calls for a broad interpretation, circumscribed only by the limitation that the means used be such as are reasonably necessary or appropriate to achieve the sought for result.

■ Nevertheless, due consideration of this broad principle of interpretation does not require the court to abdicate its judicial function of discriminating between a proper exercise of the granted power and an attempted exercise of the power which goes beyond the bounds of the grant.

■ I also agree with the argument of the Government that allocation may be accomplished in many ways. Three ways have been suggested, namely, allocation by restriction, allocation by diversion, and allocation by conservation. The Govern-

674

ment's contention is that War Food Order Number 1 accomplishes an allocation of bakery products by conservation. This argument is explained briefly as follows:

In the past (the Government says) a practice has existed among bakeries of delivering day after day to retail merchants a supply of bread, cakes, etc., in excess of current needs. The retail merchant is encouraged to accept such deliveries by the inducement that whatever is not sold to the consumer may be returned to the bakery without payment, and this is accomplished either by sales on consignment, the giving of refunds or credits, the exchange of stale bread for fresh, or other like arrangement whereby the retail merchant, being guaranteed against loss, is caused to order and keep on hand more bakery products than he is able currently to sell to the public. It follows (says the Government) that by prohibiting consignment sales, refunds, exchanges, etc., including resumption of possession of the products by the bakery, the retail merchant is discouraged from continuing the practice of accepting and keeping on hand more bakery products than he is able to dispose of currently; that as a result the bakery itself will use a less quantity of the materials which go into bakery products, thereby accomplishing an allocation (that is a diminution in quantity of materials used) by conservation.

■ This argument lacks force when applied to the specific charge made against defendant. It must be remembered that the information against defendant charges merely that defendant "did resume possession" of certain bakery products. It may be assumed, without deciding the point, that to prohibit delivery on consignment, involving as it does the return to the seller without payment of goods not sold: the giving of refunds, credits, discounts, etc.; or the exchange of stale bread for fresh, could be reasonably expected to accomplish the purpose which the Government says is accomplished by these prohibitions (namely, the allocation of bakery products by conservation) within the meaning of the Second War Powers Act of 1942; but the information charges the defendant with none of these acts. It is difficult to see how the mere resumption of possession of bread could be naturally and reasonably expected to result in a conservation of the materials going into the bread. At most, such resumption of possession could amount to no more than evidence that the sale was a consignment sale, or that some refund, credit, exchange, discount, gift, or allowance had been made or agreed upon. But a defendant cannot be convicted of an offense under the mere charge that he did some act which may be evidence tending to show that he has committed the offense. The actual offense must be charged.

■ It will not suffice to say that the particular act with which defendant is charged is to be considered as one of a chain or series of acts denounced by the regulation, and that therefore it partakes of the criminality of the other acts in the series with which it is associated. The crime charged must be able to stand on its own feet. It cannot be bolstered up by the theory that it is one of a number of acts, some other of which, or all of which taken together, result in a crime. For the purposes of this decision, all extraneous matter must be eliminated from the regulation, and it must be treated as if Food Distribution Order Number 1 consisted only of the regulation that "No baker or other seller or distributor of bakery products, his agents, or employees, shall * * * resume possession * * * of any bakery product." Considered in this light it is clear that mere resumption of possession may be an entirely innocent act, unconnected with any purpose, design, or plan to encourage or induce the retail merchant to order more bakery products than he currently needs to supply his trade. In my opinion, such a regulation cannot be interpreted as a necessary or appropriate manner, condition, or extent of allocating material or facilities, as contemplated by the Second War Powers Act of 1942.

■ I am not unmindful that courts must be extremely cautious in dealing with the exercise of power by executive departments in time of war, when it is necessary that such powers be given their broadest possible scope; but Congress and not the Executive is the source of the power; and whenever a regulation which is clearly beyond the authority of the appropriate administrative officer to establish and promulgate is sought to be enforced by an executive department, the court would be remiss in its duty if it failed to hold such a regulation invalid when properly challenged.

For the reasons given I will sustain defendant's demurrer to the information.